FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BEAU ARMSTRONG,<br><br>        Plaintiff,<br><br>v.<br><br>ATRIUM MEDICAL CORPORATION, GETINGE AB, and MAQUET CARDIOVASCULAR US SALES LLC,<br><br>        Defendants. | No. 1:22-cv-03007-MKD<br><br>ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br>ECF No. 18 |

Before the Court is Defendant Getinge AB's ("Getinge") Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 18. The Court has reviewed the motion and the record and is fully informed. For the reasons stated below, the Court grants Defendant Getinge's motion.

## BACKGROUND

Plaintiff underwent hernia repair surgery in 2018. ECF No. 1 at 8. Plaintiff's surgeon implanted ProLite, a polypropylene surgical mesh, into Plaintiff's abdomen. ECF No. 1 at 6, 8. Approximately two years later, Plaintiff's

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 1

hernia reoccurred, and he underwent revision surgery.  ECF No. 1 at 8.  Plaintiff alleges that the reoccurrence and other injuries he suffered are the result of the insertion of the ProLite mesh.  ECF No. 1 at 2, 8-9.  Plaintiff brings suit against Defendants Getinge, Atrium Medical Corporation ("Atrium"), and Maquet Cardiovascular US Sales, LLC ("Maquet"), related corporations,[1] alleging against each various tort claims and a contract claim under the Washington Products Liability Act ("WPLA") for each Defendant's alleged role in designing, manufacturing, and distributing the ProLite mesh.  ECF No. 1 at 2, 9-10.

## PROCEDURAL HISTORY

On May 9, 2022, Defendants Atrium and Maquet filed a joint Motion to Dismiss under Rule 12(b)(6).  ECF No. 15.  Plaintiff filed a response on May 27,

---

[1] Defendant Getinge wholly owns Getinge Holding USA, Inc. ("Holding USA").  ECF No. 20 at 2.  Holding USA wholly owns Getinge Holding USA II, Inc. ("Holding USA II").  ECF No. 20 at 2.  Holding USA II wholly owns Datascope Corporation.  ECF No. 20 at 2.  Datascope Corporation wholly owns Defendant Atrium.  In 2011, Defendant Getinge acquired Defendant Atrium through Datascope Corporation.  ECF No. 1 at 2; ECF No. 20 at 2; ECF No. 32 at 5.  Defendant Getinge also wholly owns Defendant Maquet.  ECF No. 1 at 3.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 2

2022. ECF No. 21.[2] On May 25, 2022, Defendant Getinge filed the instant Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 18. Plaintiff failed to respond. On September 1, 2022, the Court conducted a hearing on the motions. At the hearing, Plaintiff orally requested leave to file an untimely response to Defendant Getinge's Motion to Dismiss, which the Court granted. ECF No. 28. Plaintiff filed his opposition to the instant motion on September 8, 2022. ECF No. 32. Defendant Getinge filed its reply on September 15, 2022. ECF No. 33.

## LEGAL STANDARDS

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)) (analyzing personal jurisdiction over corporate entity Daimler AG). "Where, [as in this matter], there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *see* Fed. R. Civ. P. 4(k)(1). "Washington's long-arm statute authorizes courts to exercise jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution."

---

[2] The Court addresses Defendant Atrium and Maquet's Motion to Dismiss under Rule 12(b)(6), ECF No. 15, by separate order.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 3

1  *MBM Fisheries Inc. v. Bollinger Mach. Shop and Shipyard, Inc.*, 804 P.2d 627,

2  632 (Wash. 1991) (citing *Shute v. Carnival Cruise Lines*, 783 P.2d 78 (Wash.

3  1989)).  Therefore, a district court sitting in Washington "need only determine

4  whether personal jurisdiction in th[e] case would meet the requirements of due

5  process."  *Harris Rutsky*, 328 F.3d at 1129 (quoting *Brainerd v. Governors of the*

6  *Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989)).  "The Due Process Clause

7  limits a state's power to exercise control over a nonresident defendant."  *LNS*

8  *Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citing

9  *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).  "[D]ue process necessitates that a

10 nonresident defendant have 'certain minimum contacts' with a forum state before

11 that state can exercise personal jurisdiction over that individual or entity."  *Id.*

12 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The forum state

13 can exercise personal jurisdiction if the defendant has sufficient contacts with the

14 state 'such that the maintenance of the suit does not offend "traditional notions of

15 fair play and substantial justice."'  *Id.* (quoting *Walden*, 571 U.S. at 283).

16     The Supreme Court has long recognized two types of personal jurisdiction:

17 general and specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

18 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

19 U.S. 408, 414, nn. 8, 9 (1984)).  "Each depends on the quantity and quality of

20 contacts that the defendant has with the state."  *LNS Enterprises*, 22 F.4th at 859.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 4

"A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render [them] essentially at home in the forum State.'" *Id.* (alteration in original) (quoting *Daimler AG*, 571 U.S. at 127). "Th[is] standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (second and third alterations in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "This is an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Specific jurisdiction, in contrast, "covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit." *LNS Enterprises*, 22 F.4th at 859. The Ninth Circuit has established a three-part test to determine if a nonresident defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the

> privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

When a defendant alleges the lack of personal jurisdiction, it is the plaintiff who "bears the burden of demonstrating that jurisdiction is appropriate." *Id.* at 800. When a defendant's motion to dismiss relies only on written materials, as in this case, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). A district court "must determine whether [a plaintiff's] pleadings and affidavits establish a prima facie showing of jurisdictional facts." *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977). A plaintiff cannot make the requisite showing by relying solely on the "bare allegations of [his or her] complaint." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). If the defendant does not dispute an allegation in the complaint, the allegation is taken as true. *Id.* If any conflict exists between the parties' evidence, the court must resolve it in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 6

# ANALYSIS

Defendant Getinge, the parent company of both Defendant Atrium and Defendant Maquet, moves to dismiss for lack of personal jurisdiction, asserting the Court lacks general personal jurisdiction and specific personal jurisdiction over it and may not pierce the corporate veil to impute to it the actions of its wholly owned subsidiary, Defendant Atrium. ECF No. 18.

**A. General Jurisdiction**

Defendant Getinge is a Swedish corporation. ECF No. 1 at 2; ECF No. 18 at 5. Its principal place of business is in Sweden. ECF No. 18 at 5. In his response, Plaintiff appears to argue that, despite its foreign status, Defendant Getinge is at home in Washington. *See* ECF No. 32 at 5.

"To determine whether [Defendant Getinge's] contacts are sufficiently substantial, continuous, and systematic," in Washington to render it "at home," the Court considers the company's "'[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (second alteration in original) (quoting *Tuazon v. R.J. Reynolds Tobacco*

*Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)).[3]  Plaintiff fails to address these factors with respect to Defendant Getinge's activities.

Plaintiff provides the following information about Defendant Getinge's business activities:

> Defendant Getinge . . . is a Swedish corporation doing business in the United States.  Getinge is a pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, promotion and/or sale of medical devices used for hernia repair, including ProLite polypropylene mesh.

ECF No. 1 at 2.  Plaintiff provides no information in the Complaint, Opposition to Defendant Getinge's Motion to Dismiss, or supporting documents as to how long Defendant Getinge is purported to have been operating in Washington, or if such a time has been continuous.  Nor does Plaintiff provide information as to Defendant's economic impact, physical presence, and integration into Washington's regulatory or economic markets.  Plaintiff does not indicate what

---

[3] It is the rare case in which general personal jurisdiction is proper over a foreign corporation which does not have its principal place of business in the jurisdiction in which the lawsuit is filed. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (holding Ohio courts could exercise general jurisdiction over a foreign corporation due to the extent and nature of the temporary operations in the state, finding such business activity was continuous and systematic).

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 8

volume of products, if any, Defendant Getinge provides directly to consumers in Washington. Plaintiff fails to provide any evidence of the factors the Court is to consider. Instead, Plaintiff focuses on whether Defendant Getinge may or may not have a business address in New Jersey. ECF No. 32 at 6, 11. This is irrelevant to whether this Court, sitting in Washington, may exercise personal jurisdiction over Getinge as a Swedish corporation with its principal place of business in Sweden.

Plaintiff has failed to present any evidence regarding Defendant Getinge's business activities in Washington. Thus, Plaintiff has failed to meet his burden to establish a prima facie showing of jurisdictional facts with respect to general personal jurisdiction.

**B. Specific Jurisdiction**

*1. Minimum Contacts*

Analysis of the first prong of the Ninth Circuit's three-part test to determine whether the non-resident has sufficient minimum contacts with a forum state can differ depending on the underlying claim. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). As set forth by the Ninth Circuit, a contract or contract-based claim is analyzed under the purposeful availment test while a tort claim is analyzed under the purposeful direction test. *Id.* Plaintiff raises both contract and tort claims. ECF No. 1 at 2, 9-10; *see* RCW § 7.72 *et seq.*; RCW § 62A *et seq.* As mentioned above, "[P]laintiff bears the burden of satisfying the first two prongs of

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 9

the test." *Schwarzenegger*, 374 F.3d at 802. "[P]ersonal jurisdiction is not established in the forum state" if Plaintiff fails to meet his burden. *Id*.

      a.  Purposeful Availment

The Ninth Circuit has stated, "[a] showing that a defendant purposefully availed [itself] of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. Plaintiff contends Defendant Getinge is "a pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, promotion and/or sale of medical devices used for hernia repair, including ProLite polypropylene mesh." ECF No. 1 at 2. Plaintiff has not demonstrated how any of these purported business activities affect Washington. As noted above, Plaintiff provides no evidence in the Complaint, Opposition to Defendant Getinge's Motion to Dismiss, or supporting documents regarding Defendant Getinge's actions in Washington.

Plaintiff asserts Defendant Getinge is "doing business in the United States." ECF No. 1 at 2. This is not sufficient to meet Plaintiff's burden. In his response, Plaintiff directs the Court's attention to "advertising, sales, and educational documents" in which Defendant Getinge "has represented that it does business as 'Getinge Group' which has a New Jersey business address." ECF No. 32 at 6. However, as stated above, Defendant Getinge's alleged shared business address in

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 10

New Jersey is irrelevant to whether this Court may properly exercise personal jurisdiction over Defendant Getinge.  Indeed, Plaintiff has provided the Court with no evidence of Defendant Getinge's actions in Washington.  Accordingly, Plaintiff has failed to make the requisite showing that Defendant Getinge purposefully availed itself of the privilege of doing business in Washington, and personal jurisdiction has not been established with respect to Plaintiff's contract claim.

        b.  Purposeful Direction

To show a defendant purposefully directed its conduct toward a specific state, a plaintiff "usually [produces] evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)).  Plaintiff has alleged Defendant Getinge "purposefully directed its marketing, sales, and distribution of numerous pharmaceutical and/or healthcare products to Washington."  ECF No. 1 at 3; *see* ECF No. 32 at 5.  However, Plaintiff produces no evidence to support the Complaint's bare allegation.  The fact that ProLite, which was designed by Defendant Atrium, ECF No. 1 at 6-7, and distributed by Defendant Maquet, ECF No. 1 at 3—both of which are wholly-owned by Defendant Getinge, ECF No. 1 at 2, 3—ended up in the stream of commerce in Washington and was subsequently used in Plaintiff's 2018 surgery is not enough to establish personal jurisdiction.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 11

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)) ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."). Indeed, Plaintiff has provided the Court with no evidence of Defendant Getinge's purported purposeful marketing, sales, or distribution of any product in Washington, let alone ProLite. Accordingly, Plaintiff has failed to make the requisite showing that Defendant Getinge purposefully directed its conduct toward Washington. Personal jurisdiction has not been established with respect to Plaintiff's tort claims.

2. *Piercing the Corporate Veil*

In the Complaint and in his Opposition to Defendant Getinge's Motion to Dismiss, Plaintiff argues that Defendant Getinge should be held responsible for the

1  actions of Defendant Atrium, Defendant Getinge's wholly owned subsidiary.[4]

2  Plaintiff also argues that this Court should impute the contacts of Defendant

3  Atrium to Defendant Getinge and exert specific personal jurisdiction over

4  Defendant Getinge. ECF No. 32 at 8 ("[T]his Court may properly exercise

5  personal jurisdiction over Getinge because it became the specification developer

6  and manufacturer of ProLite mesh when it acquired Atrium in 2011.").

7      Before the Court can determine whether to pierce the corporate veil, the

8  Court must first determine what law applies. "A federal court sitting in diversity

9  applies the substantive law of the state[.]" *Clark v. Eddie Bauer LLC*, 30 F.4th

10 1151, 1154 (9th Cir. 2022) (quoting *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d

---

[4] For example, in the section, "Defendants' ProLite Mesh," the title of which implies that ProLite is designed, manufactured, and distributed, by all three defendants, Plaintiff details the history of solely Defendant Atrium's development of ProLite. ECF No. 1 at 6-7. Additionally, Plaintiff alleges Defendant Maquet is the sole distributor of ProLite, ECF No. 1 at 3; ECF No. 32 at 9, but subsequently asserts all three defendants "intentionally proceeded with the manufacture, sale, *distribution*, marketing of ProLite." (emphasis added) ECF No. 1 at 11; *see* ECF No. 32 at 7-8. Plaintiff fails to distinguish the alleged actions of each defendant, and instead lumps the three corporations together throughout his vague allegations.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 13

1   524, 530 (9th Cir. 2011)).  Defendant Getinge argues that, under the "internal

2   affairs doctrine," which applies the law of the state of incorporation, Delaware law

3   should apply in this case because Defendant Atrium is incorporated in Delaware.

4   ECF No. 18 at 8-9; ECF No. 20 at 2.  Both parties agree that the Washington

5   Supreme Court has not recognized the internal affairs doctrine.  ECF No. 18 at 8-9;

6   ECF No. 32 at 10.  However, Defendant Getinge contends that at least one

7   Washington Court has used the doctrine and certain federal courts have anticipated

8   that the Washington Supreme Court would accept the doctrine.  ECF No. 18 at 9.

9   In contrast, Plaintiff contends that Washington law applies given the Washington

10  Supreme Court has not adopted the internal affairs doctrine.  ECF No. 32 at 9-10.

11  The Court need not decide which law applies because Plaintiff cannot meet his

12  burden to show that piercing the corporate veil is appropriate under either

13  Washington or Delaware law.

14       "A parent corporation may be liable when state law supports piercing the

15  corporate veil."  *Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wash. 2002)

16  (citing *United States v. Bestfoods*, 524 U.S. 51, 55 (1998)).  Under Washington

17  law, Plaintiff "must demonstrate that the corporate form was used to violate or

18  evade a duty, and that it must be disregarded to prevent loss to an innocent party."

19  *Washington Water Jet Workers Ass'n v. Yarbrough*, 90 P.3d 42, 58 (Wash. 2004).

20  To pierce the corporate veil and reach Defendant Getinge, Plaintiff must show

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 14

Defendant Getinge overtly intended "to disregard the corporate entity in order to avoid a duty owed to [Plaintiff]." *Minton*, 47 P.3d. at 562 (citing *Morgan v. Burks*, 611 P.2d 751 (Wash. 1980)). The "[m]ere common ownership of stock, the same officers, employees, etc., does *not* justify disregarding the separate corporate identities unless a fraud is being worked upon a third person." *Garibay v. Komatsu Ltd.*, 134 F. App'x 164 (9th Cir. 2005) (emphasis added) (quoting *Rena-Ware Distribs., Inc. v. State*, 463 P.2d 622, 625 (Wash. 1970)) (not reported). The requirement to pierce the corporate veil under Delaware law is essentially identical.[5]

---

[5] "[A]nalogous to veil piercing, the alter ego theory requires that the corporate structure cause fraud or similar injustice." *Outokumpu Eng'g Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) (listing cases). A parent-subsidiary relationship, alone, does not support alter ego liability, *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 271 n.15 (D. Del. 1989), so long as the parent company does not have "exclusive domination and control . . . to the point that [the subsidiary] no longer ha[s] legal or independent significance of [its] own.". *Outokumpu*, 685 A.2d at 729 n.2. Said another way, the "injustice" must be "an abus[e of] the corporate form to effect a fraud." *Outokumpu*, 685 A.2d at 729.

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 15

      Defendant Getinge wholly owns Defendant Atrium. While the corporations are related, they are not intrinsically bound. ECF No. 1 at 2; ECF No. 20 at 2. As set forth in the declaration of Chad Carlton, Defendant Getinge is removed from Defendant Atrium's day-to-day activities. ECF No. 20 at 2-5. Defendant Atrium maintains its own officers and board of directors. ECF No. 20 at 2. Defendant Atrium maintains separate and independent bylaws and financial records from Defendant Getinge. ECF No. 20 at 3. Defendant Atrium "is responsible for the research, development, design, testing, manufacturing, producing, packing, warnings, instructions, and labeling of [ProLite]." ECF No. 20 at 3. Defendant Atrium is independently responsible for acquiring FDA authorization of its products, and it was the entity that obtained authorization for ProLite from the FDA. ECF No. 20 at 3. Defendant Atrium has its own employees, which it pays from accounts held independently from that of Defendant Getinge. ECF No. 20 at 3-4. Defendant Atrium also enters into its own contracts and business agreements for which it does not need prior approval from Defendant Getinge unless such a contract or agreement surpasses a certain financial threshold. ECF No. 20 at 4. The majority of Defendant Atrium's contracts or agreements do not require Defendant Getinge's approval. ECF No. 20 at 4.

      Plaintiff has not submitted any evidence contradicting the declarations of Chad Carlton. Thus, Plaintiff has not demonstrated that Defendant Getinge overtly

ORDER GRANTING DEFENDANT GETINGE AB'S MOTION TO DISMISS - 16

intended to disregard its corporate entity in order to avoid a duty owed to Plaintiff. Even if there was enough overlap between Defendant Atrium and Defendant Getinge's business activities, which there is not, there is not a viable fraud claim as to meet Washington's requirements to pierce the corporate veil. Plaintiff is unable to meet his burden under Washington law. Thus, the Court cannot impute Defendant Atrium's contacts upon Defendant Getinge, rendering the Court unable to exert specific jurisdiction over Defendant Getinge.

### C. Jurisdictional Discovery

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *LNS Enterprises LLC*, 22 F.4th at 864 (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)). Jurisdictional discovery should not be granted, however, on a plaintiff's "hunch that [discovery] might yield jurisdictionally relevant facts." *Id.* (alteration in original) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). Additionally, jurisdictional discovery is not appropriate when a plaintiff's "bare allegations" are expressly rebutted. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). Plaintiff has not provided the Court with any facts tying Defendant Getinge to Plaintiff's alleged harm except as Defendants Atrium and Maquet's parent company. This is not enough to meet the requisite showing to

pierce the corporate veil as discussed above.  Nor is it enough to allow Plaintiff to go on a fact-finding mission to establish personal jurisdiction as Defendant Getinge specifically denies Plaintiff's allegations.  Plaintiff's request for jurisdictional discovery is denied.

## CONCLUSION

Plaintiff has failed to meet the burden to establish the Court has general or specific personal jurisdiction over Defendant Getinge.  Plaintiff has also failed to meet the burden to establish that the Court can pierce the corporate veil and impute Defendant Atrium's contacts upon Defendant Getinge in order for the Court to exert specific jurisdiction over Defendant Getinge.  Additionally, Plaintiff's factual allegations are facially insufficient for the Court to permit him jurisdictional discovery.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Getinge AB's Motion to Dismiss For Lack of Personal Jurisdiction, **ECF No. 18**, is **GRANTED**.  Defendant Getinge AB shall be **DISMISSED** from this action.

**IT IS SO ORDERED**. The District Court Executive is directed to file this Order, provide copies to counsel, and **TERMINATE** Defendant Getinge AB as a defendant in this action.

DATED October 26, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE
